UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.: 1:25-cv-24128

AT LAW AND IN ADMIRALTY

JUDY LYNNE HICKS,

  Plaintiff,

v.

CARNIVAL CORPORATION
d/b/a CARNIVAL CRUISE LINE
a Foreign Profit Corporation,

  Defendant.

_____/

## COMPLAINT FOR DAMAGES

The Plaintiff JUDY LYNNE HICKS hereby sues the Defendant CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE a Foreign Profit Corporation and files this Complaint for Damages and says:

## THE PARTIES AND JURISDICTION

1. This is an action for damages which exceed $75,000 exclusive of interest, costs, and attorney's fees.

2. **THE PLAINTIFF.**  The Plaintiff JUDY LYNNE HICKS (hereinafter referred to as "Plaintiff") is *sui juris* and is a resident and citizen of Lexington County, South Carolina.

3. **THE DEFENDANT.** The Defendant CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE (hereinafter referred to as "Carnival" or "Defendant") is incorporated outside of the state of Florida and a citizen of Panama, but does business in the State of Florida, and at all times material hereto was and is doing business in Miami-Dade County, Florida. At all

times material hereto, the Defendant owned and/or operated the cruise ship on which the subject negligence occurred.

4. **FEDERAL SUBJECT MATTER JURISDICTION.** Federal subject matter jurisdiction arises under and is by virtue of Diversity of Citizenship pursuant to 28 U.S.C. § 1332, as this is a civil action where the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign state. This action also arises under and is by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C. § 1333. Further, this action is being filed in Federal Court in Miami Dade County, Florida, as required by the venue selection clause in the Passenger Contract Ticket issued by the Defendant.

5. **VENUE AND PERSONAL JURISDICTION**. The Defendant, at all times material hereto, itself or through an agent or representative, in the County and in the District in which this Complaint is filed:

   a) Operated, conducted, engaged in or carried on a business venture in this state and/or county; and/or

   b) Had an office or agency in this state and/or county; and/or

   c) Engaged in substantial activity within this state; and/or

   d) Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193.

6. All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## OTHER ALLEGATIONS COMMON TO ALL COUNTS

7. **DATE OF THE INCIDENT.** The incident occurred on October 3, 2024.

8.     **LOCATION OF THE INCIDENT.**   The incident occurred onboard the vessel the *Carnival Mardi Gras,* a ship in navigable waters while the Plaintiff was a passenger onboard the vessel. Specifically, the Plaintiff's slip and fall occurred on the exterior of the Serenity Pool Deck 18 designated walkway of the Carnival *Mardi Gras*.

9.     **STATUS OF THE PLAINTIFF AT THE TIME OF THE INCIDENT.**  At all times material hereto, the Plaintiff was a passenger on the subject cruise ship described herein and accordingly was an invitee while on the vessel.

10.     **THE DANGEROUS CONDITION.** Carnival owns and operates 29 cruise ships which includes the *Carnival Mardi Gras*.  Carnival's operations involve attracting crowds to a central location and controlling and ensuring the safety of those crowds. On each and every one of Carnival's ships including the *Carnival Mardi Gras* there are open deck with pool areas. The open deck areas feature swimming pools, hot tubs, showers, lounge chairs, bars, dining, entertainment and activities. Carnival selected and paid for the installation of the floor materials used on all open decks throughout the fleet.  This material is a synthetic resin floor material.   Carnival selected and installed this open deck flooring material that is known to be unreasonably slippery-when-wet which includes the open decks on the *Carnival Mardi Gras*.  The open deck, Deck 18, on the *Carnival Mardi Gras* is a major hub of activity and attracts hundreds if not thousands of passengers to this deck.  The open deck on Deck 18 of the *Carnival Mardi Gras*, boasts several dining options to suit any palate, pools, live music, hot tubs and seating areas for relaxation as well as large lead screens for passengers to watch movies, or shows while lounging or sitting on the open deck area.

11.     Like all Carnival ships, the *Carnival Mardi Gras* operations involve attracting crowds to a central location and controlling and ensuring the safety of those crowds. Carnival attracts passengers to its exterior deck areas because Carnival offers numerous amenities which include but are not limited to pool and hot tubs, slides, restaurants, drink and snack stations, bars,

entertainment, elevators, and guest services. Passengers constantly drip and track water from the pools, hot tubs, drinks, coming to and from pool/wet areas, crew mopping and floor cleaning onto the deck floors. Guests and crew are known to drip and track water and liquids on and throughout the exterior deck walkways which include Carnival's exterior deck floors.

12.     Further, these exterior deck areas offer walkways leading to and between these amenities and are also installed within amenity areas and elevators.  To make matters worse, the floor of the exterior deck of Deck 18 is exposed to the elements like rain, wind, and sea water.  Carnival knows that its exterior public areas are high traffic areas.

13.     As anticipated and intended by Carnival, passengers constantly and repeatedly use the open decks, including Deck 18 onboard *Carnival Mardi Gras* throughout the day. For this reason, Carnival knew or should have known the design and selection of materials for outdoor areas needed to be appropriate, slip resistant and safe for installation in locations subject to heavy passenger traffic and continuous exposure to the outdoor elements and wetness.

14.     Carnival knows that water on the exterior deck floors can blends in with the floors. Carnival knows that passengers may not be able to observe that the deck is wet or know the extent to which the decking surface becomes dangerously slippery when wet.  As a result of the known risk of slippery conditions caused by rain, pooling water, oil from tanning lotion, spilled beverages, or even dampness on the outdoor deck surfaces, Carnival requires its crew members to place caution signs to warn passengers of such hazardous conditions.  Therefore, Carnival knew or should have known that its passengers may not know that Carnival's outside deck floors can be dangerous.

15.     Despite the fact that Carnival was aware of these circumstances based on its years of maritime experience and knowledge of prior incidents demonstrating that its outdoor flooring slipperiness increases significantly when wet. In this instance, Carnival continued to allow passengers access to the outdoor deck area on Deck 18 even when the deck floors were wet, or water

was pooling. Carnival knew of the hidden dangers of the unreasonable slipperiness of the wet floor, yet Carnival or its employees did little or nothing to address these dangers.

16.     **DESCRIPTION OF INCIDENT.**  On October 3, 2024, at approximately 2:00 p.m., Carnival allowed a large accumulation of water to remain on the open deck floors for hours in the Serenity Pool Deck area of the *Carnival Mardi Gras*.  Carnival's crew failed to inspect and maintain this open deck area with sufficient regularity to prevent this area from accumulating a large puddle of water. Carnival failed to provide warnings to the passengers that this area was wet and slippery. Carnival failed to post any signs, cones, or other warnings, block off the area, put blowers on the floor of the area, put towels down on the area to dry the floor, and failed to guard over the area and use personnel to warn passengers. Carnival failed to reasonably train and/or supervise its crew to reasonably ensure that its slip and fall procedures, policies and/or programs were used and applied to this area of the ship. Carnival failed to dry mop, mop, dry and/or otherwise clean the floor from water accumulations from the pool deck flooring. Carnival also failed to properly mark this dangerous condition, cordon, or block off the area, or timely post warning signs or warn its passengers of this dangerous condition.  As a result of Carnival's negligence, passenger Judy Lynne Hicks slipped, fell on the open deck of deck 18 on board the *CCL Mardi Gras* on October 3, 2024.

17.     More specifically the Plaintiff attempted to walk across the open deck, Deck 18 in the designated walkway onboard the Carnival *Mardi Gras* on her way to the restroom. Before heading to the restroom area the Plaintiff went to her lounge sofa to use her towel and dry off but did not put her shoes on because the walk to the restroom was a short walk. The Plaintiff passed a corner two to three feet away from the towel station and noticed her feet were suddenly very wet and she thought to herself "this is very slippery."  To get out of this wet slippery area that blended into the floor and felt by Hicks, the Plaintiff attempted to step out of this wet area.  Suddenly the

Plaintiff started to slip and could not catch herself before falling.  The Plaintiff fell and landed in a large puddle of water that was at least 3 feet by 3 feet if not larger. The Plaintiff tried to break her fall and extended her arms back behind her.  However, she failed to break her fall and instead fell backwards and smashed her head on deck the floor. As a result, Plaintiff sustained serious and permanent injuries.

18.     **DAMAGES**. As a result of Carnival's negligence, the Plaintiff slipped, fell and sustained severe and permanent injuries, including but not limited to sprained left wrist, and a concussion. These injuries are permanent and significantly affect the life and abilities of Plaintiff. These are extremely painful injuries and have caused and will continue to cause severe disability with permanent impairment. Hicks has suffered these losses in the past and will continue to suffer them in the future. These injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future. These injuries and damages also include but are not limited to non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.

19.     **NOTICE: PARTICIPATION IN DESIGN, SELECTION OF MATERIALS AND/OR CONSTRUCTION.** The *Carnival Mardi Gras* is part of the Excel Class which includes the Carnival *Celebration,* and Carnival *Jubilee.*  The *Excel* Class as well as all ships in Carnival's fleet were designed and custom built on the specifications or at the direction of Carnival's shoreside New Build Department and/or updated by Carnival's Refurbishment Department as well as other shoreside departments. Carnival employs architects, designers, and engineers.  The ship was built in Italy at a shipyard under the constant supervision of Carnival's onsite construction managers,

designers, architects, and engineers. During construction of the ship, as with all Carnival ships, and pursuant to the contract with the shipyard, Carnival had full access to the ship to inspect and to reject any aspect of the design or construction of the ship.  Carnival maintained ultimate control under their contract with the shipyard if any aspect of design or construction is unsafe, in violation of International safety codes, or not reasonable under the circumstances.  Carnival held the ultimate control because it participates in the design and because they are onsite during construction. Carnival also held ultimate control over design and construction because if their request for a certain design or construction is not carried out correctly or if their request for changes are not carried out Carnival can withhold payment. All of Carnival ships including the *Excel* Class from bow to stern and across all decks have the express approval from Carnival before entering navigable waters.  This includes the synthetic resin floor materials that Carnival has used and installed onboard its ships for over a decades.

20.    **NOTICE – OPTION TO INCREASE FLOOR SYSTEM SLIP RESISTANCE**. Carnival has known for years that this synthetic floor material is slippery when wet regardless of where it is installed.  Carnival has a long-standing relationship with the company that makes and/or installs this synthetic floor system.  Based on this long-term relationship, Carnival knew or should have known that this floor material can be made more slip resistant if certain coatings and/or materials are added to the floor system.  Carnival knew or should have known that the company that installs and/or makes the floor system offers these additional coatings and/or materials that increase slip resistance. Therefore, Carnival knew or should have known that these additives and/or coatings significantly increase slip resistance when this floor system is wet. However, Carnival chose not to pay for the design, selection and/or construction of its water park floors with these extra materials.

21.    **NOTICE: PRIOR SIMILAR INCIDENTS**.   Prior similar incidents show evidence that Carnival had notice of the dangerous condition here.  Carnival documents prior slip and falls, slipperiness, and water accumulations on its open decks in various ways, which may include prior shipboard meetings, logs, or databases of prior similar incidents of slip and falls; prior complaints made to guest services throughout its fleet; prior slip testing of the floor surface. Examples of prior similar incidents known to date include the following:

a) *Monica Kopp v. Carnival Corporation*, Case No.1:20-cv-20456: Passenger Monica Kopp was injured on February 26, 2019, when he slipped and fell on the wet and slippery open deck synthetic resin floors on Deck 10 while on board the Carnival *Horizon.*

b) On August 27, 2021, passenger Linda Brightman was injured when she slipped and fell on the wet and slippery open deck synthetic resin floors while walking near the Tides Pool on Deck 16 onboard the Carnival *Mardi Gras*.

c) On August 28, 2021, passenger Kimberley Strong was injured when she slipped and fell on the wet and slippery open deck synthetic resin floors while exiting the Tides Pool and descending the step on Deck 16 onboard the Carnival *Mardi Gras*.

d) On August 30, 2021, passenger Valeri Dimitrov was injured when he slipped and fell on the wet and slippery open deck synthetic resin floors while exiting the Tides Pool on Deck 16 onboard the Carnival *Mardi Gras*.

e) On September 5, 2021, passenger Kevin Kennah was injured when he slipped and fell on the wet and slippery open deck synthetic resin floors after descending the jacuzzi stairs in the Tides Pool area on Deck 16 onboard the Carnival *Mardi Gras*.

f)   On September 6, 2021, passenger Angela Grissom was injured when she slipped and fell on the wet and slippery open deck synthetic resin floors after stepping off the wooden bench by the Tides Pool on Deck 16 onboard the Carnival *Mardi Gras*.

g)   On September 7, 2021, passenger Junita Bligen was injured when she slipped and fell on the wet and slippery open deck synthetic resin floors as she was descending the whirlpool stairs by the Tides Pool area on Deck 16 onboard the Carnival *Mardi Gras*.

h)   On September 16, 2021, passenger David Burgess was injured when she slipped and fell on the wet and slippery open deck synthetic resin floors after stepping off the wooden bench by the Tides Pool on Deck 16 onboard the Carnival *Mardi Gras*.

i)   On September 19, 2021, passenger Judith Ortiz was injured when she slipped and fell on the wet and slippery open deck synthetic resin floors while walking by the Tides Pool area on Deck 16 onboard the Carnival *Mardi Gras*.

j)   On September 19, 2021, passenger Lourdes Galvan was injured when she slipped and fell on the wet and slippery open deck floor after descending the lowest jacuzzi stair onto the API floor (synthetic resin flooring) on Deck 16 onboard the Carnival *Mardi Gras*.

k)   On September 23, 2021, passenger Collen Johnston was injured when she slipped and fell on the wet and slippery open deck synthetic resin floors after stepping off the wooden bench by the Tides Pool on Deck 16 onboard the Carnival *Mardi Gras*.

l)   On September 23, 2021, passenger Eugene Glenn was injured when he slipped and fell on the wet and slippery open deck synthetic resin floors when he stepped over the wooden bench as he exited the Tides Pool on Deck 16 onboard the Carnival *Mardi Gras*.

m) On November 9, 2021, passenger Geryl Hickey was injured when she slipped and fell on the wet and slippery open deck synthetic resin floors while walking towards the Tides Pool jacuzzi on Deck 16 onboard the Carnival *Mardi Gras*.

n) On November 28, 2021, passenger Carlos Rodriguez was injured when he slipped and fell on the wet and slippery open deck synthetic resin floors while walking toward the shower by the Tides Pool on Deck 16 onboard the Carnival *Mardi Gras*.

o) *William Hornsberger v. Carnival Corporation*, Case No. 1:22-cv-20204: Passenger William Hornsberger was injured on December 12, 2021, when he slipped and fell on the wet and slippery open deck synthetic resin floors on Deck 16 while on board the Carnival *Mardi Gras.*

p) *Nadine Valentine v. Carnival Corporation*, Case No. 1:22-cv-23616: Passenger Nadine Valentine was injured on or about December 21, 2021, when she slipped and fell on the wet and slippery open deck synthetic resin floors on the open deck steps on Deck 8 (Havana Pool Deck) of the Carnival *Mardis Gras*.

q) *Ana Martinez v. Carnival Corporation*, Case No. 1:22-cv-21626: Passenger Ana Martinez slipped and fell and sustained injuries on August 5, 2021, when she slipped on the wet and slippery open deck synthetic resin flooring near the Patio Pool area of the Carnival *Mardi Gras*.

r) *Shelley Gersten v. Carnival Corporation*, Case No. 1:22-cv-23751: Passenger Shelley Gersten was injured on January 15, 2022, when she slipped and fell on the wet and slippery open deck synthetic resin floors on the Lido Deck (Deck 16) while on board the Carnival *Mardi Gras*.

s) *Diana Rose Mayne v. Carnival Corporation*, Case No. 1:22-cv-22617: Passenger Diana Rose Mayne was injured on January 24, 2022, when she slipped and fell on the

wet and slippery open deck synthetic resin floors on Deck 18 while on board the Carnival *Mardi Gras.*

t) *Makenzie Perry v. Carnival Corporation*, Case No. 1:22-cv-22908: Passenger Makenzie Perry was injured on or about June 5, 2022, when she slipped and fell on the wet and slippery open deck synthetic resin floors on Deck 8 (Havana Pool Deck) of the Carnival *Mardi Gras*.

u) *Kathleen Harrison v. Carnival Corporation*, Case No.1:23-cv-20633: Passenger Kathleen Harrison was injured on April 24, 2024, when she slipped and fell on the wet slippery synthetic resin flooring on the Lido Deck (Deck 16) while on board the Carnival *Mardi Gras*. Additionally, on the Carnival *Mardi Gras* Facebook page, there was a comment made by another Carnival *Mardi Gras* passenger from the subject cruise stating that he had witnessed at least 5 other passengers slip and fall on the Lido Deck onboard the Carnival *Mardi Gras*.

CCL also documents prior incidents of slip and falls, complaints of slipperiness and/or wetness on its exterior walkway floors in logs, databases, shipboard meeting minutes, passenger comment cards as well as many other sources.

22. **NOTICE: THE LENGTH OF TIME AND SIZE OF THE DANGEROUS CONDITION.** Carnival knew or should have known about the dangerous condition because of the length of time that the condition existed. In order for the wet area to be as large as it was, the condition existed for an extended period of time. The Serenity Pools open at 8:00 am and Mrs. Hicks slipped and fell at about 2:00 p.m. The subject puddle was at least three by three feet in size if not longer, for guests and crew to drip, track and spread this amount of water it would take hours to accumulate to such a size.

23.      **NOTICE: ON-GOING, REPETITIVE PROBLEM.**  Additionally, evidence that Carnival had notice of the dangerous condition here is shown by its years of experience that these hazardous conditions regularly accumulate in the subject area.

24.      **NOTICE- CREW MEMBERS IN THE VICINITY.**  Carnival knew or should have known about the dangerous condition as there were crew members in the vicinity of the subject area. These crew are assigned to inspect, maintain and provide warnings regarding hazards on this flooring as part of the scope of their employment with the cruise line.

25.      **NOTICE: TRAINING AND PROCEDURES.**  Carnival, for years, has created and implemented written policies, procedures, and trainings related to slip and fall hazards. Carnival's written documents instruct crew members that the open decks, including the area of this subject incident, are a crucial area to clean, dry, monitor, and inspect. Carnival trains its crew that the open decks are one of the areas with the most potential slip and falls as shown below:

### AREAS OF MOST POTENTIAL SLIPS AND FALLS

• Open Decks
• Atrium Lobbies
• Lido Dining (Inside)
• Cabin Bathrooms
• Lido Dining (Outside)
• Public Restrooms





These written documents instruct crew members that "good housekeeping is the first and most important (fundamental) level of preventing falls due to slips and trips" as shown below:

### PREVENTIVE MEASURES
### SLIPS, TRIPS & FALLS

**Housekeeping**

- Good housekeeping is the first and the most important (fundamental) level of preventing falls due to slips and trips. It includes:
- cleaning all spills immediately,
- marking spills and wet areas,
- mopping or sweeping debris from floors,
- removing obstacles from walkways and always keeping them free of clutter,
- securing (tacking, taping, etc.) mats, rugs and carpets that do not lay flat,
- always closing file cabinet or storage drawers,
- covering cables that cross walkways,
- keeping working areas and walkways well lit,
- replacing used light bulbs and faulty switches.
- Without good housekeeping practices, any other preventive measures such as installation of sophisticated flooring, specialty footwear or training on techniques of walking and safe falling will never be fully effective.



4

These training programs include but are not limited to Carnival's "Own Your Own Spill" program, two-minute trainers, Carnival's Carnival College Program as well as its HESS MS Procedures which address slip and fall prevention, floor maintenance and provision of warnings regarding shipboard hazards. Carnival's training programs specifically train its crew members to inspect and maintain its open-deck floors including the Lido Deck floors in a clean and dry condition. Carnival uses Two Minute Trainers to train its crew members. Two Minute Trainers include written documents directing crew members to clean up spills and wet floors immediately. These documents also require crew members to place wet floor signs on floors that become repetitively wet and/or are known to be wet. Carnival created these procedures for its crew because, without warnings, passengers may not know or be able to perceive that its floors are wet and/or slippery. These policies and procedures are evidence that shows Carnival had notice of the dangerous condition.

26.     **NOTICE: FUN TIMES DAILY.** Carnival's Fun Times daily newspaper states, "use caution on outdoor decks as they can be slippery." This is additional evidence that Carnival had notice of the dangerous condition.

27.     **NOTICE: VIOLATION OF INDUSTRY STANDARDS.** Carnival, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.") Carnival's open decks, including the floors between the Seafood Shack and "Street Eats" eateries and the Beach Pool area on Deck 18, are escape routes that Carnival must maintain in a safe, clear, clean and dry condition. Upon information and belief, Carnival, at all relevant times, was aware of industry safety standards of ASTM International, ANSI, ISM Code and Regulations and other industry standards applicable to providing and maintaining safe walkways and floor materials. See, *e.g.*, IMO, MSC Circular 735 (24 June 1996); U.S. Access Board, Draft Passenger Vessel Accessibility Guidelines (2000-present) and ADA Accessibility Guidelines; 46 CFR §§72.05-20(n), 116.438(h); ASTM F-1166-07; Life Safety Code; and Safety of Life at Sea SOLAS) Treaty..

**COUNT I**
**NEGLIGENT FAILURE TO MAINTAIN**
**(Direct Liability for Negligence Under General Maritime Law)**

28.     The Plaintiff JUDY LYNNE HICKS hereby adopts and re-alleges each and every allegation in paragraphs 1 through 28 above.

29.     This is an action against Carnival by and through its crew for failure to maintain its open deck floors in a reasonably safe condition onboard the *Carnival Mardi Gras* on October 3, 2024.

30.  **DUTIES OWED BY CARNIVAL.** Carnival owes a duty to exercise reasonable care for the safety of its passengers, including Plaintiff.  Carnival owes a duty as a common carrier to its passengers to maintain all areas of its ship. Carnival's duties of care regarding maintaining the subject area include: (a) inspecting on a frequent and timely basis for wetness or a water accumulation on the slick floor known to become slippery-when-wet; (b) cleaning and drying wetness or a water accumulation on the slick, slippery-when-wet flooring; (c) cordoning or blocking off any area on the slick, slippery-when-wet floor with wetness or a water accumulation; (d) hiring sufficient number of cleaning personnel to patrol and inspect the floors including this one for wetness and water accumulation; including the flooring on Deck 18, area onboard the *Carnival Mardi Gras* in a safe manner, including the subject area where Plaintiff slipped and fell on October 3, 2024.

31.  **NOTICE.**  As more fully and extensively alleged in the section common to all counts above, the Defendant had actual or constructive notice in numerous ways.

32.  **CARNIVAL BREACHED ITS DUTY.**  Carnival breached its duty to maintain the slippery walkway floors on the open deck, Deck 18 onboard the *Carnival Mardi Gras* on October 3, 2024, where Plaintiff slipped and fell.  Carnival breached its duties by failing to: (a) inspect on a frequent and timely basis for wetness or a water accumulation on the slick floor known to become slippery-when-wet; (b) clean and dry wetness or a water accumulation on the slick, slippery-when-wet flooring; (c) cordon or block off any area on the slick, slippery-when-wet floor with wetness or a water accumulation; (d) hire sufficient number of cleaning personnel to patrol and inspect the floors including this one for wetness and water accumulation; including the slippery-when-wet flooring on Deck 18, area onboard the *Carnival Mardi Gras* where Plaintiff slipped and fell on October 3, 2024.

33.     **PROXIMATE CAUSE.** Carnival's failure to inspect and maintain the slippery-when-wet flooring on the subject area onboard the *Carnival Mardi Gras* in a safe manner, proximately caused Plaintiff's injuries. The Defendant's negligent inspection and maintenance allowed for a large wet area of the open deck floors be slick and slippery for an extended period of time. Had Carnival properly maintained and inspected the subject area onboard the *Carnival Mardi Gras*, Plaintiff would have never slipped, fallen and been injured on *Carnival Mardi Gras* on October 3, 2024.

34.     **DAMAGES.**  As a result of Carnival's negligent maintenance, Plaintiff has and will suffer damages in the past and in the future as described above and incorporated herein.

WHEREFORE, the Plaintiff demands Judgment against Carnival for damages recoverable under The General Maritime Law and state law including economic and noneconomic damages. Economic damages include medical, psychological, household, and other expenses in the past and in the future, lost wages and other compensation in the past, and loss of earning capacity in the future. The noneconomic damages suffered by the Plaintiff in the past and in the future include pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest on economic and noneconomic damages from the date of the subject incident under The General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT II
## NEGLIGENT FAILURE TO MAINTAIN
### (Vicarious Liability for Negligence
### *Respondeat Superior* Under General Maritime Law)

35.     The Plaintiff JUDY LYNNE HICKS hereby adopts and re-alleges each and every allegation in paragraphs 1 through 26 above.

36.     This is an action against Carnival for its vicarious liability arising from the active negligence of its stewards and/or pool attendants (aka cleaners) as well as their supervisors (the Pool and Deck Supervisor, the Assistant Housekeeping Manager/Trainee Assistant Housekeeping Manager and Housekeeping Manager) who were assigned, scheduled, instructed, directed and/or responsible for the inspection and/or maintenance of the slippery-when-wet flooring on Deck 18 onboard *Carnival Mardi Gras* on October 3, 2024.

37.     **DUTIES OWED BY THESE CLEANING PERSONNEL.**  Carnival personnel described herein owed duties to exercise reasonable care under the circumstances for the safety of Carnival's passengers arising from the employer-employee relationship between Carnival and its personnel.  The cleaners or stewards who were assigned to this ship and to this Deck 18 area on the day of this fall had a duty to:  (a) inspect on a frequent and timely basis for wetness or a water accumulation on the slick floor; (b) clean and dry wetness or a water accumulation on the slick floor; (c) maintain mechanisms to cordon or block off any area on the slick floor with wetness or a water accumulation, and other means.

38.     Carnival's shipboard management within the housekeeping department create shift schedules and section assignments that designate specific employees to inspect and maintain the floors of their designated areas including the slippery-when-wet flooring in the subject area. Carnival's employees assigned to the subject area are part of a larger class of crewmembers on the housekeeping department which are commonly referred to as stewards, pool attendants or cleaners. Carnival's Pool and Deck Supervisor, Assistant Housekeeping Manager and Housekeeping Manager scheduled, designated, assigned, instructed and/or directed stewards or cleaners to inspect and maintain the slippery-when-wet flooring on Deck 18, which included but was not limited to the area near Deck 18, onboard *Carnival Mardi Gras* on October 3, 2024.

39.     Carnival's cleaning personnel assigned to this area and on that day as well as Carnival's Pool and Deck Supervisor, Assistant Housekeeping Manager, Trainee Assistant Housekeeping Manager and/or Housekeeping Manager in charge of these personnel at that time were acting within the course and scope of their employment with the Defendant Carnival. Accordingly, the Defendant Carnival is liable and responsible vicariously for the negligence of these cleaning personnel.

40.     Upon information and belief, Carnival's shipboard housekeeping supervisors assigned at least one steward to inspect and maintain the area where Plaintiff slipped and fell. The crew members who were responsible for the inspection and maintenance of the open-deck floors actively failed to do so.  If Carnival assigned additional crew to inspect and maintain the open deck floors on the open deck, these crew members also actively failed to do so.

41.     The stewards assigned to the subject area where Plaintiff slipped and fell along with their supervisors were responsible for inspecting on a timely and frequent basis areas for wetness or water accumulation, clean and dry areas of wetness or water accumulation, block off areas on the slick floor with wetness or a water accumulation or other means to prevent slip and falls in compliance with Carnival's maintenance program as alleged in paragraph 26.

42.     **<u>NOTICE IS NOT REQUIRED FOR EMPLOYEE NEGLIGENT ACTS.</u>** Carnival is vicariously liable for negligent acts of its employees/crewmembers.  A passenger is not required to establish that a shipowner had actual or constructive notice of a risk-creating condition to hold a shipowner liable for the negligent acts of its employees. *Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164, 1169-1170 (11th Cir. 2021).   In this case Carnival's employees/crewmembers' negligent acts caused the Plaintiff's injuries.

43.     Notwithstanding that, Carnival had actual notice and/or constructive notice of the dangerous condition as alleged in the paragraphs above and incorporated herein.

44. **BREACH OF DUTIES.**  Carnival's employees/crewmembers breached their duty to maintain the slippery-when-wet flooring in this area of the *Carnival Mardi Gras* on October 3, 2024.  Carnival's crew who were assigned to that area of the slippery-when-wet flooring on that day failed to: (a) inspect on a frequent and timely basis for wetness or a water accumulation on the slick floor; (b) clean and dry wetness or a water accumulation on the slick floor; (c) cordon or block off any area on the slick, floor with wetness or a water accumulation, and other means of inspecting and maintaining the dangerous condition of the slippery-when-wet flooring on the open-deck section of Deck 18, where Plaintiff slipped and fell on October 3, 2024. Carnival's employees/crew failed to inspect and/or maintain the area to prevent slip and falls in compliance with Carnival's maintenance program as alleged in paragraph 26.

45. **PROXIMATE CAUSE.**  The failure of these Carnival cleaning personnel to inspect and maintain the slippery-when-wet flooring on the subject area onboard the *Carnival Mardi Gras* in a safe manner, proximately caused Plaintiff's injuries. These failures of inspection and maintenance allowed for a large wet area of the open deck floors on the outdoor Deck 18 to be slick and slippery for an extended period of time. Had Carnival properly maintained and inspected the subject area onboard the *Carnival Mardi Gras*, Plaintiff would have never slipped, fallen and been injured on *Carnival Mardi Gras* on October 3, 2024.

46. **DAMAGES.**  Because of Carnival's employees'/crewmembers' negligent maintenance of the open deck walkway on Deck 18 onboard the *Carnival Mardi Gras*, Hicks has and will suffer damages in the past and in the future as described above and incorporated herein.

WHEREFORE, the Plaintiff demands Judgment against Carnival under the theory of vicarious liability for damages recoverable under The General Maritime Law and state law including economic and noneconomic damages. Economic damages include medical, psychological, household, and other expenses in the past and in the future, lost wages and other compensation in the

past, and loss of earning capacity in the future. The noneconomic damages suffered by the Plaintiff in the past and in the future include pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest on economic and noneconomic damages from the date of the subject incident under The General Maritime Law, and any and all other damages which the Court deems just or appropriate

<u>**COUNT III**</u>
<u>**NEGLIGENT FAILURE TO WARN**</u>
**(Direct Liability for Negligence Under General Maritime Law)**

47.     The Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 1 through 28 above.

48.     This is an action against Carnival for its negligent failure to warn passengers, including Plaintiff, of its hazards, risks or dangers onboard the *Carnival Mardi Gras*.

49.     **DUTIES OWED BY CARNIVAL.** Carnival owes duties to exercise reasonable care under the circumstances for the safety of its passengers. The Defendant owes a duty to warn of dangers known to the carrier in places where the passenger is invited to or may reasonably be expected to visit. Carnival owes a duty of reasonable care under the circumstances. Carnival's duty of care includes warning of dangerous conditions on board the *Carnival Mardi Gras,* including the walkway located on the Serenity Deck 18 area where Hicks slipped and fell on October 3, 2024. Carnival's duties of care include warning passengers who come into the area of the slippery-when-wet flooring and of the presence of a water accumulation by: (a) posting warning signs; (b) placing physical barriers; (c) stationing personnel at the site of the water or wetness, and other means; to warn passengers of dangerous conditions onboard the *Carnival Mardi Gras,* including

the dangerous condition of the slippery-when-wet flooring on Deck 18, where Plaintiff slipped and fell on October 3, 2024.

50.      **NOTICE.**  As more fully and extensively alleged in the section common to all counts above, the Defendant had actual or constructive notice in numerous ways.

51.      **CARNIVAL BREACHED ITS DUTY.** Carnival breached its duty to warn the Plaintiff of the dangerous conditions on board the *Carnival Mardi Gras*, including where Plaintiff slipped and fell on October 3, 2024.  Carnival breached its duties to the Plaintiff by its actions and conduct.  Carnival failed to warn passengers who come into the area of the slippery-when-wet flooring and of the presence of a water accumulation by failing to:  (a) post warning signs, provide written notices and/or other visual cues; (b) place physical barriers; (c) station personnel at the site of the water or wetness, and other means; and failed to warn passengers of dangerous conditions onboard the *Carnival Mardi Gras,* including the dangerous condition created by the slippery-when-wet flooring on Deck 18, where Plaintiff slipped and fell on October 3, 2024.

52.      **PROXIMATE CAUSE.** Carnival's failure to reasonably warn Plaintiff of the dangerous conditions on board the *Carnival Mardi Gras*, including the open deck floors on Deck 18, where Plaintiff slipped and fell on October 3, 2024, proximately caused the Plaintiff's injuries. Had Carnival reasonably warned Plaintiff of the dangerous condition, Plaintiff would have been aware of the dangerous condition and never would have walked onto the dangerous, slippery-when-wet flooring. Plaintiff therefore would have never slipped, fallen and been injured on board the *Carnival Mardi Gras* on October 3, 2024.

53.      **DAMAGES.**  As a result of Carnival's negligent failure to warn, Plaintiff has and will suffer damages in the past and in the future as described above and incorporated herein.

WHEREFORE, the Plaintiff demands Judgment against Carnival for damages recoverable under The General Maritime Law and state law including economic and noneconomic damages.

Economic damages include medical, psychological, household, and other expenses in the past and in the future, lost wages and other compensation in the past, and loss of earning capacity in the future. The noneconomic damages suffered by the Plaintiff in the past and in the future include pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest on economic and noneconomic damages from the date of the subject incident under The General Maritime Law, and any and all other damages which the Court deems just or appropriate.

### COUNT IV
### NEGLIGENT FAILURE TO WARN
**(Vicarious Liability for Negligence**
***Respondeat Superior* Under General Maritime Law)**

54.     The Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 1 through 28 above.

55.     This is an action against Carnival for its vicarious liability arising from the active negligence of its stewards and/or pool attendants (aka cleaners) as well as their supervisors (the Pool and Deck Supervisor, the Assistant Housekeeping Manager/Trainee Assistant Housekeeping Manager and Housekeeping Manager) who were assigned, scheduled, instructed, directed and/or responsible for warning guests of hazards, risks or dangers onboard the *Carnival Mardi Gras* which included the slippery-when-wet flooring on Deck 18 on October 3, 2024.

56.     **DUTIES OWED BY CARNIVAL.**  Carnival's personnel described herein owed duties to exercise reasonable care under the circumstances for the safety of Carnival's passengers arising from the employer-employee relationship between Carnival and its cleaning personnel. The cleaners or stewards who were assigned to this ship and to this Deck 18 on the day of this fall had duties to warn passengers who come into the area of the slippery-when-wet flooring and of the presence of a water accumulation included but is not limited to:  (a) posting warning signs,

provide written notices and/or other visual cues; (b) placing physical barriers, (c) stationing personnel at the site of the water or wetness, and other means; to warn passengers of dangerous conditions onboard the *Carnival Mardi Gras,* including the dangerous conditions of the slippery-when-wet flooring on Deck 18, where Plaintiff slipped and fell on October 3, 2024.

57.     Carnival's shipboard assistant housekeeping manager or supervisor create shift schedules and section assignments that designate specific crewmembers to inspect, maintain and warn passengers of hazards, risks or dangers in their designated areas including the subject area's flooring. Further, at all times material hereto, said crewmembers were employees of the Defendant and were part of the larger class of crewmembers on the housekeeping department and which are often referred to as stewards or cleaners. A Carnival's assistant housekeeping manager or supervisor scheduled, designated, assigned, instructed and/or directed the stewards or cleaners to warn passengers of dangerous conditions on Deck 18, which included but was not limited to the area where Plaintiff slipped and fell on Deck 18, onboard *Carnival Mardi Gras* on October 3, 2024.

58.     These cleaning personnel, that is the stewards  assigned to this area and on that day as well as the Pool and Deck Supervisor, Assistant Housekeeping Manager/Trainee Assistant Housekeeping Manager and Housekeeping Manager in charge of these personnel at that time were acting within the course and scope of their employment with the Defendant Carnival. Accordingly, the Defendant Carnival is liable and responsible vicariously for the negligence of these cleaning personnel.

59.     The stewards assigned to the subject area where Plaintiff slipped and fell as well as their supervisors were responsible for being aware of the surroundings, regularly placing signs, stickers, blocking off areas, and other visual or audible notices of dangerous conditions to prevent slip and falls in compliance with Carnival's slip and fall prevention programs as alleged in paragraph 26.

60.    **NOTICE IS NOT REQUIRED FOR EMPLOYEE NEGLIGENT ACTS.**

Carnival is vicariously liable for negligent acts of its employees/crewmembers.  A passenger is not required to establish that a shipowner had actual or constructive notice of a risk-creating condition to hold a shipowner liable for the negligent acts of its employees. *Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164, 1169-1170 (11th Cir. 2021).   In this case Carnival's employees/crewmembers' negligent acts caused the Plaintiff's injuries.

61.    Notwithstanding that, Carnival had actual notice and/or constructive notice of the dangerous condition as alleged in the paragraphs above and incorporated herein.

62.    **BREACHED DUTIES.**   Carnival's employees/crew breached their duties to warn Plaintiff of the dangerous conditions on Deck 18, onboard *Carnival Mardi Gras* on October 3, 2024, where Plaintiff slipped and fell.  On the day of the incident Carnival's employees/crew failed to warn the Plaintiff of dangerous conditions of the slippery-when-wet flooring in the area where Plaintiff fell.  Carnival's employees/crew failed to warn passengers who came into the area of the slippery-when-wet flooring and of the presence of a water accumulation by failing to: (a) post warning signs, provide written notices and/or other visual cues; (b) place physical barriers; (c) station personnel at the site of the water or wetness, and other means of warning of dangerous conditions of the slippery-when-wet flooring on the Deck 18, where Plaintiff slipped and fell on October 3, 2024.

63.    **PROXIMATE CAUSE.**   Carnival's employees'/crews' failure to reasonably warn Plaintiff of the dangerous conditions on board the *Carnival Mardi Gras*, including the area on Deck 18, where Plaintiff slipped and fell on October 3, 2024, proximately caused the Plaintiff's injuries. Had Carnival's employees/crew reasonably warned Plaintiff of the dangerous conditions, Plaintiff would have been aware of the dangerous condition and never would have walked onto

the dangerous, slippery-when-wet flooring. Plaintiff therefore would never have slipped, fallen and been injured onboard the *Carnival Mardi Gras* on October 3, 2024.

64. **DAMAGES.** As a result of Carnival's employees/crewmembers' negligent failure to warn, Plaintiff has and will suffer damages in the past and in the future as described above and incorporated herein.

WHEREFORE, the Plaintiff demands Judgment against Carnival under the theory of vicarious liability for damages recoverable under the General Maritime Law and state law including but not limited to economic damages including medical treatment, psychological treatment, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT V**
**NEGLIGENT TRAINING OF PERSONNEL**
**(Direct Liability for Negligence Under General Maritime Law)**

65. The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1 through 28 above.

66. This is an action against Carnival for negligent training of shipboard crew members.

67. **DUTIES OWED BY CARNIVAL.** Carnival owes a duty to exercise reasonable care for the safety of its passengers. Carnival owes a duty of reasonable care under the circumstances. Carnival owes a duty to train its crew members to properly inspect, clean, dry and warn of dangers known to Carnival where Carnival invites or reasonably expects passengers to go. Carnival's duty of care includes training its crew members to inspect, clean, dry and warn

passengers about dangerous conditions on board the *Carnival Mardi Gras*, including the specific area where Plaintiff slipped and fell on October 3, 2024.

68.     At all times material hereto, Carnival operated, controlled and/or maintained the open deck floors as well as its shipboard housekeeping department.  Carnival was responsible for among other things and without limitation overseeing the operations of the open decks which include Deck 18 areas and shipboard housekeeping department.  This operational responsibility included but was not limited to training crew how to inspect, maintain, warn guests of hazards and prevent slip and falls.

69.     Carnival created training programs specifically addressing the inspection and maintenance of floors, warning guests of hazards (including wet slippery floors) as well as how to prevent slips and falls onboard its ships.  These trainings include programs that are specifically applicable to the inspection, maintenance, provision of warnings to guests regarding hazards and slip and fall prevention on the open decks including Decks 18.  These programs are more thoroughly alleged and incorporated herein in paragraph 26.

70.     Carnival should have become aware and could have easily discovered that it had failed to properly train its crew members given that the crew member(s) failed to inspect and clean and dry the subject area, failed to provide the Plaintiff warnings about the dangerous condition and/or otherwise failed to implement or operate Carnival's training programs designed to prevent slip and falls, provide warnings and maintain floors in a reasonably safe and dry condition.

71.     **NOTICE.**  As more fully and extensively alleged in the section common to all counts above, the Defendant had actual or constructive notice in numerous ways.

72.     **CARNIVAL BREACHED ITS DUTIES.**  Carnival breached its duty of care owed to Plaintiff and was negligent by failing to reasonably train its crew members to inspect, clean, dry and warn passengers of the dangerous conditions and/or implement or operate its training

procedures to prevent slip and fails on board the *Carnival Mardi Gras* including the subject area where Plaintiff slipped and fell on October 3, 2024. Carnival failed to reasonably implement or operate its training programs including but not limited to the following ways:

a.   failing to teach shipboard crew how to inspect for puddles;

b.   failing to teach shipboard crew how frequently to inspect for puddles;

c.   failing to teach shipboard crew where puddles or water accumulations continuously and/or repetitively accumulate;

d.   failing to teach shipboard crew how to warn guests about wet slippery floors;

e.   failing to teach shipboard crew how to properly mark, cordon off and/or provide visual cues to alert guests that floors may be wet and slippery;

f.   failing to teach shipboard crew how to reasonably clean and dry floors in a safe condition;

g.   failing to teach shipboard crew how to test, check and/or otherwise determine whether crew understand how to inspect and maintain floors in a clean and dry condition;

h.   failing to teach shipboard crew how to test, check and/or otherwise determine whether crew understand how to warn guests to prevent slip and falls and/or of known slippery wet floors;

i.   failing to teach shipboard crew how to test, check and/or otherwise determine whether crew understand Carnival's slip and fall prevention program;

j.   failing to teach shipboard crew how frequently crew should be trained to ensure they understand, remember and retain information from training programs regarding how to inspect and maintain the flooring and warn passengers of wet floors and the dangerousness of wet floors;

k.      failing to teach shipboard crew to comply with industry standards regarding how to train its crew members to inspect and maintain the flooring and warn passengers of wet floors and the dangerousness of wet floors.

l.      failing to teach shipboard crew to assign sufficient crew to implement and operate its inspection, maintenance, warning and/or slip and fall prevention programs.

In doing so, Carnival failed to reasonably implement or operate its training programs described in paragraph 26 and incorporated herein.

73.     At the time Plaintiff fell on the open deck floor, the crew that were responsible for warning, cleaning, drying and inspecting that area failed to do so. Because those crewmembers were not properly trained, Carnival failed to reasonably warn passengers like Hicks of the dangerous conditions on board the *Carnival Mardi Gras* including the area where Hicks slipped and fell on October 3, 2024.  Because those crew were not reasonably trained, those crewmembers also failed to properly inspect, clean, dry and/or otherwise reasonably maintain the area in a safe condition.

74.     **PROXIMATE CAUSE.** Carnival's failure to reasonably train its crew to implement or operate its training procedures proximately caused Plaintiff's injuries. Had Carnival reasonably implemented or operated its training programs onboard its ships including the Carnival *Mardi Gras* on October 3, 2024, the crew members would have inspected, cleaned, dried, and warned Hicks about the dangerous condition.  If Carnival had reasonably implemented or operated its training programs, the dangerous condition would not have existed. If Carnival reasonably trained its crew member, Hicks would have been aware of the dangerous condition. Plaintiff therefore would never have slipped and fell on the subject incident area on October 3, 2024.

75.     **DAMAGES.**  As a result of Carnival's negligent training the Plaintiff has and will suffer damages in the past and in the future as described above and incorporated herein.

WHEREFORE, the Plaintiff demands Judgment against Carnival for damages recoverable under The General Maritime Law and state law including economic and noneconomic damages. Economic damages include medical, psychological, household, and other expenses in the past and in the future, lost wages and other compensation in the past, and loss of earning capacity in the future. The noneconomic damages suffered by the Plaintiff in the past and in the future include pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest on economic and noneconomic damages from the date of the subject incident under The General Maritime Law, and any and all other damages which the Court deems just or appropriate.

### COUNT VI
### NEGLIGENT DESIGN, CONSTRUCTION
### AND SELECTION OF MATERIALS
### (Direct Liability for Negligence Under General Maritime Law)

76.     The Plaintiff Hicks hereby adopts and re-alleges each and every allegation in Paragraphs 1 through 28 above.

77.     This is an action against Carnival for its negligent design, construction and selection of the subject area.

78.     **DUTIES OWED BY CARNIVAL.**  Carnival owes duties to exercise reasonable care under the circumstances for its passengers. Carnival's duties of care include: (a) selecting materials which include selecting a floor surface which is suitable and safe for a high volume of foot traffic, continuous exposure to the outdoor elements and wetness and where the inspection and cleaning is at a low interval and amount as is the case on Carnival ships; (b) designing and constructing all areas onboard its ships to meet applicable industry standards and to be reasonably safe for their intended use or foreseeable use by its passengers; (c) approving the selection, design

and/or construction of its ships only when such industry standards are met in the context of the area's intended or foreseeable use.

79.     The circumstances are that Carnival owns and operates 29 cruise ships which include the *Carnival Mardi Gras*.  The *Carnival Mardi Gras* is part of the Excel Class which includes the *Carnival Celebration* and *Carnival Jubilee*.  The Excel Class as well as other ships in Carnival's fleet were designed and custom built on the specifications or at the direction of Carnival's shoreside New Build Department and other shoreside departments. Carnival employs architects, designers, and engineers.  The ship was built in Italy at a shipyard under the constant supervision of Carnival's onsite construction managers, designers, architects, and engineers.

80.     During construction of the ship, pursuant to the contract with the shipyard, Carnival has full access to the ship to inspect and to reject any aspect of the design or construction of the ship.  Carnival maintains ultimate control under their contract with the shipyard if any aspect of design or construction is unsafe, in violation of International safety codes, or not reasonable under the circumstances.  Carnival has ultimate control because it participates in the design and because they are onsite during construction. Carnival also has ultimate control over design and construction because if their request for a certain design or construction is not carried out correctly or if their request for changes is not carried out Carnival can withhold payment. All of Carnival ships including the *Excel* Class from bow to stern and across all decks have the express approval from Carnival before entering navigable waters.

81.     The *Carnival Mardi Gras* was delivered to Carnival as finished on July 31, 2021. Carnival has operated and maintained the ship continuously since that time. The Carnival *Mardi Gras* has a capacity for 6,500 passengers and 2,000 crew members.

82.     Like all Carnival ships, the *Carnival Mardi Gras* operations involve attracting crowds to a central location and controlling and ensuring the safety of those crowds. Carnival

attracts passengers to its exterior deck areas because Carnival offers numerous amenities which include but are not limited to pool and hot tubs, slides, restaurants, drink and snack stations, bars, entertainment, elevators, and guest services. Passengers constantly drip and track water from the pools, hot tubs, drinks, coming to and from pool/wet areas, crew mopping and floor cleaning onto the deck floors. Guests and crew are known to drip and track water and liquids on and throughout the exterior deck walkways which include Carnival's exterior deck floors.

83.     Further, these exterior deck areas offer walkways leading to and between these amenities.  To make matters worse, the floor of the exterior deck of Deck 18 is exposed to the elements like rain, wind, and sea water.  Carnival knows that its exterior public areas are high traffic areas.

84.     As anticipated and intended by Carnival, passengers constantly and repeatedly use the open decks, including Deck 18 onboard *Carnival Mardi Gras* throughout the day. For this reason, Carnival knew or should have known the design and selection of materials for outdoor areas needed to be appropriate, slip resistant and safe for installation in locations subject to heavy passenger traffic and continuous exposure to the outdoor elements and wetness.

85.     Carnival knows that water on the exterior deck floors blends in with the floors. Carnival knows that passengers may not be able to observe that the deck is wet or know the extent to which the decking surface becomes dangerously slippery when wet.  As a result of the known risk of slippery conditions caused by rain, pooling water, oil from tanning lotion, spilled beverages, or even dampness on the outdoor deck surfaces, Carnival requires its crew members to place caution signs to warn passengers of such hazardous conditions.  Therefore, Carnival knew or should have known that its passengers may not know that Carnival's outside deck floors can be dangerous.

86.     Despite the fact that Carnival was aware of these circumstances based on its years of maritime experience and knowledge of prior incidents demonstrating that its outdoor flooring slipperiness increases significantly when wet.  In this instance, Carnival continued to allow

passengers access to the outdoor deck area on Deck 18 even when the deck floors were wet, or water was pooling. Carnival knew of the hidden dangers of the unreasonable slipperiness of the wet floor, yet Carnival or its employees did little or nothing to address these dangers.

87.     **NOTICE.**  As more fully and extensively alleged in the section common to all counts above, the Defendant had actual or constructive notice in numerous ways.

88.     Carnival knew or should have known that the subject area including the outdoor flooring it chose and installed in Deck 18, onboard the *Carnival Mardi Gras* was unreasonably dangerous and slippery when wet.

89.     Carnival knew or should have known of the dangerousness of the subject area including the subject floor since its installation.

90.     **CARNIVAL BREACHED ITS DUTIES.**  Carnival breached its duties of care owed to Plaintiff and was negligent by selecting, designing and/or constructing, approving, the materials installed onboard the *Carnival Mardi Gras* including the subject area where Plaintiff slipped and fell on October 3, 2024.  Carnival breached its duties to the Plaintiff by its actions and conduct. Carnival failed to reasonably design and/or construct, select, approve the materials onboard the *Carnival Mardi Gras* by failing to: (a) select materials which include selecting a floor surface which is suitable and safe for a high volume of foot traffic, continuous exposure to the outdoor elements and wetness and where the inspection and cleaning is at a low interval and amount as is the case on Carnival ships; (b) design and construct all areas onboard its ships to meet applicable industry standards and to be reasonably safe for their intended use or foreseeable use by its passengers; (c) approve the selection, design and/or construction of its ships only when such industry standards are met in the context of the area's intended or foreseeable use.  Carnival failed to select, design and/or construct and approve materials which complied with industry standards.

The design and/or materials Carnival chose, selected, approved of, and installed for the subject area on board the *Carnival Mardi Gras* was unreasonably dangerous.

91.      **PROXIMATE CAUSE.**  Carnival's negligent design, construction, and selection of materials for the subject area on board the *Carnival Mardi Gras* proximately caused Plaintiff's injuries.  Had Carnival properly designed, constructed and selected the material installed on the subject area onboard the *Carnival Mardi Gras,* Plaintiff would have never slipped, fallen and been injured on October 3, 2024.

92.      **DAMAGES.**  Carnival's negligent design, construction, and selection of materials the Plaintiff has and will suffer damages in the past and in the future as described above and incorporated herein.

WHEREFORE, the Plaintiff demands Judgment against Carnival for damages recoverable under The General Maritime Law and state law including economic and noneconomic damages. Economic damages include medical, psychological, household, and other expenses in the past and in the future, and lost wages and other compensation in the past, loss of earning capacity in the future. The noneconomic damages suffered by the Plaintiff in the past and in the future include pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest on economic and noneconomic damages from the date of the subject incident under The General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## DEMAND FOR JURY TRIAL

The Plaintiff hereby demands trial by jury of all claims so triable.

By: *s/ Sarah A. Lobel*

**JOHN H. HICKEY, ESQ.** (FBN: 305081)

hickey@hickeylawfirm.com

**SARAH A. LOBEL, ESQ.** (FBN 88716)

slobel@hickeylawfirm.com

**HICKEY LAW FIRM, P.A.**

12150 SW 128 Court, Suite 225

Miami, Florida 33186

Telephone: (305) 371-8000

Facsimile: (305) 371-3542

*Attorney for the Plaintiff*